## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kimberly Herman and                    Civ. No. 16-1213 (MJD/BRT)
Kevin Roseff,

       Plaintiffs,

v.

                 **REPORT AND RECOMMENDATION**

Coloplast Corp.,

       Defendant.

---

Benjamin E. Ford, Esq. and Paul W. Shaw, Esq., Verrill Dana, LLP; W. Anders Folk, Esq., Stinson Leonard Street LLP, counsel for Plaintiffs.

Jacqueline A. Mrachek, Esq., and Nicole A. Truso, Esq., Faegre Baker Daniels LLP, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 118.)

Defendant argues that the Amended Complaint should be dismissed pursuant to releases in Plaintiffs' separation agreements. Defendant also argues that Plaintiffs' retaliation claims under the False Claims Act ("FCA") are time-barred. This Court held a hearing on October 25, 2016. (Doc. No. 146.) For the reasons stated below, this Court recommends that the motion to dismiss be converted to a motion for summary judgment and that the motion be granted.

This case is an offshoot of a *qui tam* action brought in the District of Massachusetts on December 2, 2011. *United States of America ex rel. Herman, et al. v. Coloplast Corp., et al.*, Civil Action No. 11-12131-RWZ (D. Mass.); (Doc. No. 1.) The underlying *qui tam* action remained under seal while the United States investigated the claims until approximately October 2014. (Doc. No. 142, Pls.' Br. 9.) On November 20, 2014, two of the relators in that case, Kimberly Herman and Kevin Roseff, amended the *qui tam* complaint to bring individual FCA retaliatory discharge claims against one of the defendants, Coloplast Corporation. (Doc. No. 21.) On June 1, 2015, Herman and Roseff amended the complaint again to add claims against Coloplast under the Minnesota Whistleblower Act. (Doc. No. 40.)

On May 11, 2016, the district court in Massachusetts severed the new claims from the *qui tam* action and transferred them to the District of Minnesota. (Doc. No. 116.) After the transfer, Defendant moved to dismiss (Doc. No. 118), and the motion was referred to this Court. (Doc. No. 124.)

I.     **Background**

   A.     **Employment of Herman and Roseff by Coloplast**

Defendant Coloplast Corporation ("Coloplast"), is a Minnesota-based company that manufactures ostomy and continence care products reimbursed by Federal health care programs. Plaintiffs were former employees of Coloplast who were retained or hired in 2009 and terminated in 2011.

### 1.      Herman was Hired in 2009 and Terminated in April 2011

Kimberly Herman was retained by Defendant as a consultant in 2009, hired as

Vice President of Marketing in 2010, and promoted to President in April 2010. Herman's

employment as President was governed by an Executive Employment Agreement

("Employment Agreement"). (Doc. No. 138, Aff. of Jacqueline Mrachek ("Mrachek

Aff."), Ex. E.) Under this agreement, Herman would be entitled to severance if she was

fired without cause and signed a general release of all claims against the Defendant. (*Id.*

§ 2.06(f).)

Herman's employment was terminated on April 15, 2011. On May 5, 2011,

Herman signed a Separation Agreement and Release ("Separation Agreement and

Release"). Under the Separation Agreement and Release, Herman received payments

exceeding $600,000: (1) $345,100 (equal to 52 weeks of Herman's base salary); (2)

COBRA premiums for up to 52 weeks; (3) $92,957 representing a pro-rated cash

incentive bonus; (4) $54,774 representing a pro-rated long-term incentive bonus;

(5) $102,000 representing a long-term incentive bonus for prior years; (6) reimbursement

of her housing lease for two months; (7) use of her fleet vehicle for approximately two

months post-termination; (8) reimbursement of relocation costs for her family to return to

Florida; and (9) six months of outplacement services. (Mrachek Aff., Ex. D.) The

Separation Agreement and Release included the following release language:

> In consideration of the Severance Compensation and other benefits
> described herein including but not limited to Articles 4 through 8, you, on
> behalf of yourself and any of your agents, representatives, insurers, heirs,
> executors, administrators and assigns, absolutely and unconditionally
> release and agree not to sue, file claims against, or pursue recovery of any

alleged damages in any forum from Coloplast and any of Affiliates or its past or current parent corporations, subsidiaries, and divisions, and all respective past and present officers, directors, employees, agents, representatives, attorneys, insurers, indemnitors, successors and assigns of Coloplast, for any and all claims you may have against them up to the date you sign this Agreement, whether you now know of their existence. This includes but is not limited to claims or causes of action directly or indirectly relating to your employment including its termination; claims for breach of contract; any tort claims; claims of discrimination on the basis of age, race, national origin, gender, religion, creed, disability, marital status, or any other protected class. This includes but is not limited to claims arising under the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, Title VII of the Civil Rights Act, the Minnesota Human Rights Act, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Minnesota Whistleblowing Statute, or any other federal, state or local statute, ordinance, common law or other principle of law.

You are not, however, waiving any claims that may arise after the date on which you sign this Agreement . . . .

(*Id.* ¶ 9.)

## 2.    Roseff was Hired in 2009 and Terminated in 2011

Kevin Roseff was hired by Defendant as a National Account Manager in June 2009. In the Spring of 2010, Roseff was promoted to Director of Distribution. Similar to Herman, Roseff's employment was governed by an Employment Agreement that promised severance if he was terminated without cause upon the execution of a general release. (Doc. No. 144, Decl. of Benjamin Ford ("Ford Decl."), Ex. A, Roseff Employment Agreement § 2.06(c).)

Roseff was terminated on July 20, 2011. Like Herman, Roseff signed a Separation Agreement and Release ("Separation Agreement and Release") soon after his discharge. Roseff received: (1) a lump sum payment of $131,250.02; (2) COBRA premiums for up

to 39 weeks; and (3) three months of outplacement services. (Mrachek Aff., Ex. F.)

Roseff's Separation Agreement and Release included the following release language:

> In consideration of the Separation Compensation and Benefits Continuation, you, on behalf of yourself and any of your agents, representatives, insurers, heirs, executors, administrators and assigns, absolutely and unconditionally release, acquit and forever discharge Coloplast and any of its past or current parent corporations, subsidiaries, affiliates and divisions, and all of their respective past and present officers, directors, employees, agents, representatives, attorneys, insurers, and indemnitors, and all successors and assigns of Coloplast (together with Coloplast, the "Released Parties"), from all right to relief of any kind, including without limitation any damages, debts, liabilities, judgments, and executions, whether in law or equity, contract or tort, absolute or contingent, known or unknown, which you may have up to the date you sign this Agreement, including but not limited to any rights to relief you may have arising out of any claims or causes of action directly or indirectly relating to your employment or the termination of your employment, including those under federal, state and local laws prohibiting employment discrimination based on any protected classification. This release includes but is not limited to a waiver of all rights to relief of any kind you may have from the Released Parties arising out of claims under the Age Discrimination in Employment Act, the Older Workers Benefits Protection Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, 42 U.S.C. § 1981, the Lilly Ledbetter Fair Pay Act of 2009, the Employment Retirement Income Security Act, the Equal Pay Act, the Minnesota Human Rights Act, or any other federal, state or local statute, ordinance, common law or other principle of law. Other than the Separation Compensation and Benefits Continuation, the receipt of which is subject to the terms and conditions of this Agreement, this release also includes a waiver of all claims for compensation of any kind from the Released Parties, including without limitation, any claims for bonuses, commissions, stock options or any other form of equity, vacation pay or other paid time off, perquisites or expense reimbursements.
>
> You are not, however, waiving any claims . . . that may arise after the date on which you sign this Agreement, . . . .

(*Id.* ¶ 7.)

**B.      The *Qui Tam* Litigation Against Coloplast Filed on December 2, 2011**

After their terminations, Herman, Roseff, and another Coloplast employee, Amy

Lestage, filed a *qui tam* action against Coloplast and several other defendants in the

United States District Court for the District of Massachusetts alleging violations of the

FCA based on sales arrangements between Coloplast and certain suppliers. (Doc. No. 1.)

Specifically, in the *qui tam* action, Herman and Roseff alleged that Defendant, along with

other manufacturers of Durable Medical Equipment ("DME"), provided illegal kickbacks

to various suppliers of these products in exchange for the suppliers switching patients to

Defendant's products. "As a result of the kickbacks provided by the DME Manufacturers

[such as Defendant] to the . . . DME Suppliers, the . . . DME Manufacturers caused

and/or induced the . . . DME Suppliers to submit false claims to federal health

programs . . . ." (Doc. No. 1, Compl. ¶ 94.)

**C.      *Qui Tam* Action Proceeds and Two of the Three Relators Amend to
          Add Individual Retaliation Claims Against Coloplast**

The original *qui tam* Complaint filed on December 2, 2011, did not include any

allegations by Herman and Roseff that Coloplast retaliated against Plaintiffs in violation

of the FCA or state law.[1] As discussed above, the underlying *qui tam* action remained

under seal while the United States investigated the claims until approximately October

2014. (Doc. No. 142, Pls.' Br. 9.) When they amended the complaint in November 2014,

---

[1]      On or about December 22, 2015, Coloplast paid $3,160,000 to settle the
underlying *qui tam* claims, 31 U.S.C. §§ 3729(a)(1)(A), (B), that were brought in
Massachusetts. (Mrachuk Aff., Ex. A.) The other defendants combined to settle the *qui
tam* claims for approximately $20 million. (*Id.*, Ex. A-C.)

Plaintiffs alleged for the first time that they were terminated in retaliation for their "investigation of and refusal to participate in Coloplast's fraudulent and unlawful marketing activities." (Doc. No. 21, Am. Compl. ¶¶ 251, 255.) Plaintiffs allege claims under the anti-retaliation provisions of the False Claims Act and the Minnesota Whistleblower Act. (Doc. No. 133, Am. Compl. ¶¶ 38–59.)

## II.    Analysis

### A.    Applicable Standards Relevant to Defendant's Motion

Plaintiffs first argue that their Separation Agreements and Releases should be ignored because they are not part of the pleadings. Courts "generally must ignore materials outside the pleadings" in deciding a Rule 12(b)(6) motion, but "may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) and *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997)). Plaintiffs cite one case where a district court refused to consider a settlement agreement and release when ruling on a Rule 12(b)(6) motion. *See Roller v. GE Med. Sys. Info. Tech. Inc.*, No. Civ. 05-1297 (MJD/AJB), 2005 WL 3542707, at *2 (D. Minn. Dec. 5, 2005). Other courts in this circuit have considered release agreements in deciding motions to dismiss. *See, e.g.*, *Stefanyshyn v. Shafer Contracting Co., Inc.*, No. Civ. 05-0559 (JNE/JGL), 2005 WL 1277806, at *1 (D. Minn. May 26, 2005) (citing *Obrecht v. Electrolulx Home Prod., Inc.*, No. C04-3089-MWB, 2005 WL 578477, at *2 (N.D. Iowa Mar. 9, 2005)).

Even assuming that the Separation Agreements and Releases should not be considered in a motion to dismiss, the parties agree that this motion may be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion."). At oral argument, Plaintiffs conceded that they do not need discovery under Federal Rule of Civil Procedure 56(d), and that everything necessary to decide this motion as a summary-judgment motion is before this Court. (10/25/16 Hearing Tr.; Doc. No. 146, Minute Entry.) Therefore, this Court recommends that Defendant's motion to dismiss be converted into a motion for summary judgment. *United States v. Light*, 766 F.2d 394, 397 (8th Cir. 1985) (stating that Rule 56 "does not require trial courts to allow parties to conduct discovery before entering summary judgment").

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment "'may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

**B.     The Separation Agreements and Releases Bar Plaintiffs' Individual Claims**

Under Minnesota law,[2] a "valid release is a defense to any action on the claims released." *Sorensen v. Coast-to-Coast Stores, Inc.*, 353 N.W.2d 666, 669 (Minn. Ct. App. 1984); *see also Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006) ("A voluntary waiver of claims bars future action on such claims."). Plaintiffs do not dispute that the release agreements cover their claims and are binding under ordinary contract principles. Instead, Plaintiffs argue that the releases are prospective waivers and therefore are void as a matter of public policy. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("[T]here can be no prospective waiver of an employee's rights under Title VII."). Plaintiffs, however, did not waive any prospective claims. They signed the releases after they were terminated, and the releases only bar claims that had previously accrued. Herman released "any and all claims . . . up to the date" she signed her Separation Agreement and Release, but not any claims that "may arise after the date on which" she signed the agreement. (Mrachek Aff., Ex. D ¶ 9.) Similarly, Roseff released "all right to relief of any kind" against Coloplast "up to the date" he signed his Separation

---

[2]     Each Separation Agreement and Release is governed by Minnesota law. (Mrachek Aff., Ex. D, Herman Separation Agreement and Release ¶ 22 ("This Agreement shall be governed by, and construed and enforced in accordance with, Minnesota law without reference to choice of law, except to the extent it is pre-empted by federal law."); Ex. F, Roseff Separation Agreement and Release ¶ 19 ("All matters relating to the interpretation, construction, application, validity and enforcement of this Agreement shall be governed by the laws of the State of Minnesota . . . .").)

Agreement and Release, but not any claims that "may arise after the date on which" he signed the agreement. (Mrachek Aff., Ex. F ¶ 7.)

Plaintiffs insist that this case is "nearly identical" to *Richardson v. Sugg*, 448 F.3d 1046 (8th Cir. 2006), because the "purported releases were a prospective waiver of Plaintiffs' statutorily protected rights." (Pls.' Br. 6.) *Richardson*, however, involved a prospective waiver of Title VII claims contained in an employment contract, executed two years *before* the employee was terminated. Thus, *Richardson* followed the holding of *Gardner-Denver* and concluded that the prospective waiver was invalid. 448 F.3d at 1054 ("The public policy concerns that inhere in allowing prospective waivers of Title VII rights support the conclusion that such waiver is invalid."). Nothing in *Richardson* suggests that a waiver of accrued claims, as is the case here, would be similarly void. *See Gardner-Denver*, 415 U.S. at 52 ("[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement . . ."); *see also Kendall v. Watkins*, 998 F.2d 848, 851 (10th Cir. 1993) ("[A]n employee may agree to waive Title VII rights that have accrued, but cannot waive rights that have not yet accrued."); *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986) ("[A]n employee may validly release only those Title VII claims arising from 'discriminatory acts or practices which antedate the execution of the release.'") (quoting *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 853 (5th Cir. 1975)).

Plaintiffs further attempt to portray their waivers as prospective by linking their severance packages back to their original Employment Agreements, arguing that they received "no severance consideration beyond what they were already entitled to under

their respective employment agreements." (Pls.' Br. 7.) Thus, Plaintiffs characterize their

Separation Agreements and Releases as "pre-negotiated" or prospective waivers that gave

Defendant, in essence, a license to retaliate. The undisputed facts, however, show that

both Plaintiffs received *more* than was outlined in the severance provisions of their

original Employment Agreements. Among other additional benefits, Herman received the

use of her company-provided car for two months and a lump sum incentive payment of

$102,000. (Mrachek Aff., Ex. D, Herman Separation Agreement and Release ¶¶ 6–7;

Ex. E, Herman Executive Employment Agreement § 2.06.) Roseff received thirty-nine

weeks of COBRA premiums and outplacement services for three months. (Mrachek Aff.,

Ex. F, Roseff Separation Agreement and Release ¶¶ 4, 6; Ford Decl., Ex. A, Roseff

Employment Agreement § 2.06.) Moreover, the releases at issue are contained in the

post-termination Separation Agreements and Releases, not the Employment Agreements.

The Employment Agreements condition the receipt of severance payments upon the

*separate* execution of a general release. (Herman Executive Employment Agreement

§ 2.06(e) ("To be eligible for any of the Severance Compensation, Executive must . . .

have signed and not rescinded within the applicable time periods a general release of

claims against Company and related entities and persons, . . ."); Roseff Employment

Agreement § 2.06(b).)

   The agreements at issue in this case bear little resemblance to the scenario in

*Richardson*, where the prospective waiver and release was included in the employment

agreement itself. 448 F.3d at 1053 ("In *consideration of such guaranty* . . . [Richardson]

will, *and does hereby*, release and discharge the University, its officers, trustees and

employees from and against any liability of any nature whatsoever related to or arising

out of this Agreement and [Richardson's] termination . . . .") (emphasis added). Herman

released "any and all claims . . . up to the date" she signed her Separation Agreement and

Release, but not any claims that "may arise after the date on which" she signed the

agreement. (Mrachek Aff., Ex. D ¶ 9.) Similarly, Roseff released "all right to relief of any

kind" against Coloplast "up to the date" he signed his Separation Agreement and Release,

but not any claims that "may arise after the date on which" he signed the agreement.

(Mrachek Aff., Ex. F ¶ 7.)

　　　　Plaintiffs also argue that the releases are void against public policy because they

run counter to the purpose of the False Claims Act, which is to "encourage

whistleblowers to come forward with allegations of fraud perpetrated upon the

government, and to reward them when they do so." *Roberts v. Accenture, LLP*, 707 F.3d

1011, 1018 (8th Cir. 2013). Plaintiffs' argument, however, applies when an individual

employee release is invoked to bar a *qui tam* action, not an individual employment claim.

Moreover, since the government has an interest in *qui tam* claims, relators may be

restricted in their ability to release such claims. *See United States ex rel. Hall v. Teledyne

Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997) (discussing *United States ex rel.

Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995)); *United States ex rel. Nowak v.

Medtronic, Inc.*, 806 F. Supp. 2d 310, 336–37 (D. Mass. 2010). FCA retaliation claims,

by contrast, are personal to the individual employee. The releases at issue in this case

have no impact on the *qui tam* claims. The releases were never invoked by Coloplast or

any other *qui tam* defendant in an attempt to bar the *qui tam* action. Accordingly, the

Separation and Release Agreements are not void on public policy grounds.

Therefore, this Court concludes that the Plaintiffs' Separation Agreements and

Releases bar all of their individual claims.[3]

## C.    Statute of Limitations Bars Plaintiffs' FCA Claims

The FCA provides a three-year limitations period for retaliation claims. 31 U.S.C.

§ 3730(h)(3). Plaintiffs were terminated in April and July 2011, but the retaliation claims

were not brought until the complaint was amended in the underlying *qui tam* action more

than three years later in November 2014. Therefore, Coloplast contends that Plaintiffs'

FCA retaliation claims are time-barred.

Plaintiffs argue that their FCA retaliation claims are not time-barred because their

amendment relates back to the date of the original pleading. Federal Rule of Civil

Procedure 15(c) provides only two ways to avoid the three-year statute of limitations

through an amendment that relates back to the December 2, 2011 date of the original

pleading. First, Rule 15(c)(1)(A) permits relation back when "the law that provides the

applicable statute of limitations allows relation back." As discussed in Wright & Miller,

"the Committee note to the 1991 amendment indicates that the inclusion of this method

was to signal to the courts that if the controlling limitations law 'affords a more forgiving

principle of relation back than the one provided in this rule, it should be available to save

---

[3]     Since this Court concludes that the Separation and Release Agreements bar
Plaintiffs' claims, this Court need not address whether the tender back doctrine applies
because Plaintiffs retained the benefits of the contractual agreements with Coloplast.

the claim.'" 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1497 (3d ed. 2010). Plaintiffs do not argue that the first method applies and Defendant concedes that the applicable limitations law regarding Plaintiffs' state whistleblower claims provides a longer statute of limitations period.

For their relation back theory, Plaintiffs argue that the second method applies because the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). To arise out of the same "conduct, transaction, or occurrence," the claims must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). The facts alleged in the initial pleading "must be specific enough to put the opposing party on notice of the factual basis for the claim" or claims being added. *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010). Thus, an amended pleading "may raise new legal theories only if the new claims relate back to the original [pleading] by 'aris[ing] out of the same set of facts as [the] original claims.'" *Id.* (quoting *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003)). The original complaint did not include any factual allegations about retaliation, nor did it include any claims for relief based on any retaliatory claims. (Doc. No. 1, Compl. ¶¶ 100–105.) Plaintiffs concede that the amended complaint "*adds* that Plaintiffs' terminations from

Coloplast were in retaliation for reporting the facts supporting the qui tam claim." (Pls.'

Br. 9) (emphasis added).[4]

Plaintiffs' retaliation claims do not meet the legal standard of relation back for

purposes of Rule 15(c)(1)(B). While courts "typically find that allegations relate back to

the original claim when a relator seeks to add details to his FCA fraud claim . . . courts

tend to see retaliation claims as arising out of occurrences different from those underlying

the fraud alleged, even though the relator claims to have been terminated for reporting

that fraud." *United States ex rel. Deering v. Physiotherapy Assocs., Inc.*, 601 F. Supp. 2d

368, 376 (D. Mass. 2009) (internal citations omitted) (an amendment to a *qui tam*

complaint brought under 31 U.S.C. § 3729(a) to add a retaliation claim under § 3730(h)

does not relate back for purposes of Rule 15(c)(1)(B)).[5] In *Deering*, newly-filed

retaliation claims turned on "distinct facts." *Id.* at 377. Moreover, the allegations in the

original complaint did not "suggest the possibility that defendants could face additional

---

[4]     Plaintiffs do not argue that the statute of limitations was tolled until the original
complaint was unsealed. Instead, they point out that the underlying *qui tam* action
remained under seal while the United States investigated the claims until approximately
October 2014. (Pls.' Br. 9.) This was done in accordance with the secrecy provision in
the False Claims Act, which provides that a *qui tam* complaint "shall be filed in camera,
shall remain under seal for at least 60 days, and shall not be served on the defendant until
the court so orders." 31 U.S.C. § 3730(b)(2). Thus, according to Plaintiffs' logic, adding
new individual retaliation claims to the original complaint should be permitted and relate
back to the original complaint. (Pls.' Br. 9 ("Indeed, Coloplast has never known this case
without the retaliation claims.").) Plaintiffs' self-serving argument is not persuasive. The
factual basis for the new claims was not asserted in the original complaint.

[5]     As was the case in *Deering*, this Court need not address—and no party is
arguing—that a complaint filed by the government never relates back to a relator's *qui
tam* complaint.

claims" for retaliation. *Id.*; *see also United States ex rel. Whitcomb v. Physiotherapy Assocs., Inc.*, 555 F. Supp. 2d 949, 953 (W.D. Tenn. 2008) (finding no relation back because the  original complaint was "devoid of any facts or allegations indicating Defendants harassed, discriminated, or took any adverse action against [Plaintiff] for engaging in protected conduct"); *United States ex rel. Smart v. Christus Health*, 626 F. Supp. 2d 647, 658 n.12 (S.D. Tex. 2009) (finding no relation back because "Relator's retaliation claim is a new wrong, distinct from the fraud alleged in the rest of the complaint"). So it is here. The *qui tam* complaint detailed the fraudulent kickback scheme perpetrated by various parties, including Defendant. The *qui tam* complaint mentions that Plaintiffs are former employees of Defendant, but only in passing, and it does not contain allegations that state or even suggest that Plaintiffs were terminated for unlawful reasons. The new retaliation claims, by contrast, allege that Plaintiffs investigated the false claims violations, reported those violations to Defendant, refused to participate in those violations, and were terminated as a result. (Doc. No. 21, Am. Compl. Counts XII and XIII; Doc. No. 133, Am. Compl. ¶¶ 20–37, 41, 46.) Therefore, the FCA retaliation claims do not arise out of the same conduct, transaction, or occurrence as the original *qui tam* relator claims, the amended complaint does not relate back, and Plaintiffs' FCA retaliation claims are time-barred. Accordingly, this Court recommends that summary judgment be granted in Defendant's favor on Plaintiffs' FCA retaliation claims.[6]

---

[6]     Coloplast does not argue that the state law Whistleblower claims are time-barred. For the reasons discussed above, the Whistleblower claims should be dismissed pursuant to the releases in Plaintiffs' separation agreements. If the district court does not adopt this

(Footnote Continued on Next Page)

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1.  Defendant's motion to dismiss (Doc. No. 134) be treated as a motion for

summary judgment pursuant to Federal Rule of Civil Procedure 12(d);

2.  Defendant's motion for summary judgment (Doc. No. 134) be **GRANTED**;

and

3.  That judgment be entered accordingly.

Date: November 9, 2016.

_s/ Becky R. Thorson_
BECKY R. THORSON
United States Magistrate Judge

---

(Footnote Continued from Previous Page)
Court's recommendation with respect to the releases, but finds that the FCA retaliation claims are time-barred, the district court should decline to exercise supplemental jurisdiction over the state law Whistleblower claims. *See* 28 U.S.C. § 1367(c)(3); *Barstad v. Murray Cnty.*, 420 F.3d 880, 888 (8th Cir. 2005) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Plaintiffs do not plead diversity jurisdiction. Therefore, this Court further recommends that the district court decline to exercise supplemental jurisdiction over any remaining state law Whistleblower claims.

**NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **November 23, 2016**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.